UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| CONNIE BERRY, | |
| Plaintiff, | Case No. 1:18-cv-00046 |
| v. | Judge William L. Campbell, Jr. |
| | Magistrate Judge Alistair E. Newbern |
| ANDREW M. SAUL,[1] Commissioner of Social Security, | |
| Defendant. | |

To:    The Honorable William L. Campbell, Jr., District Judge

## REPORT AND RECOMMENDATION

Plaintiff Connie Berry filed this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) denying her application for disability insurance benefits (DIB), as provided under Title II of the Social Security Act. Berry has filed a motion for judgment on the administrative record. (Doc. No. 19.) The Commissioner responded in opposition (Doc. No. 20), and Berry filed a reply (Doc. No. 23). Having considered those filings and the transcript of the administrative record (Doc. No. 10), and for the reasons given below, the Magistrate Judge will recommend that Berry's motion for judgment on the administrative record (Doc. No. 19) be denied and that the decision of the Commissioner be affirmed.

---

[1]      Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019. Under Federal Rule of Civil Procedure 25(d), he is automatically substituted as the defendant in this action. Fed. R. Civ. P. 25(d).

# I.     Introduction

Berry filed a Title II application for DIB on November 14, 2014, at forty-one years old. (AR 15, 167.) Berry alleged that, since April 23, 2014, she has been disabled as the result of diabetes, stroke, high blood pressure, deteriorating bones in her feet and vertebrae, scoliosis, bulging discs in her back, severe arthritis, and asthma. (AR 187.) After her application was denied initially and upon reconsideration, Berry requested a hearing before an administrative law judge (ALJ). (AR 15, 98, 106, 111.) Berry was represented by counsel at the June 13, 2017 hearing, at which she and a vocational expert (VE) testified. (AR 34–68.)

In a September 11, 2017 opinion, the ALJ found that Berry was not disabled and denied her claim. (AR 15–26.) In reaching that conclusion, the ALJ made the following enumerated findings:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2.     The claimant has not engaged in substantial gainful activity since April 23, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.     The claimant has the following  severe impairments: asthma, diabetes mellitus, neuropathy, morbid obesity, degenerative disc disease of the lumbar spine, cervicalgia, and hypertension  (20 CFR 404.1520(c)).

\*          \*          \*

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

\*          \*          \*

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). More specifically, the claimant can lift and/or carry up to 10 pounds frequently and up to 20 pounds on occasion, push and/or pull up to 10 pounds frequently, sit for up to six hours in an eight-hour workday, and stand and/or

2

walk for up to six hours in an eight-hour workday. She can frequently balance, crawl, crouch, and kneel and occasionally stoop and climb stairs and ramps, but can never climb ladders, ropes, and scaffolds. Furthermore, the claimant requires the option to alternate between sitting and standing every sixty minutes, but she can occasionally tolerate exposure to fumes, odors, dusts, poor ventilation, and vibration. Finally, she can maintain attention, concentration, persistence, and pace in two hour segments of time, with customary break between segments.

\*     \*     \*

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

\*     \*     \*

7.  The claimant was born on January 30, 1973 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

\*     \*     \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 23, 2014, through the date of this decision (20 CFR 404.1520(g)).

(AR 17–26.)

The Appeals Council denied Berry's request for review on April 25, 2018, rendering the ALJ's decision the final decision of the Commissioner. (AR 1.) Berry timely filed this action on June 26, 2018, alleging that the ALJ's decision denying her benefits was not supported by

3

substantial evidence. (Doc. No. 1.) On September 12, 2018, after the Commissioner had answered (Doc. No. 9), Berry filed an amended complaint to add that the ALJ who denied her claim had not been appointed consistent with the Appointments Clause of the Constitution. (Doc. No. 12.) Berry then filed a motion for judgment on the administrative record. (Doc. No. 19.) The Commissioner responded in opposition (Doc. No. 20), and Berry filed a reply (Doc. No. 23). Berry raises four arguments on appeal: (1) that the ALJ erred in weighing the medical opinions of record; (2) that the ALJ failed to consider all of Berry's impairments in crafting her residual functional capacity; (3) that the ALJ should have found that Berry's conditions met or medically equaled one of the SSA's listed impairments; and (4) that the ALJ who denied Berry's claim was not appointed consistent with the Appointments Clause. (Doc. No. 19-1.) The parties have filed notices of supplemental authority with respect to Berry's last argument. (Doc. Nos. 24, 29.)

## II.     Review of the Record

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will only discuss those matters to the extent necessary to analyze the parties' arguments.

## III.     Legal Standard

### A.     Standard of Review

The Social Security Act authorizes the Court to review "any final decision of the Commissioner of Social Security made after a hearing" and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). This Court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains

'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). When substantial evidence supports the ALJ's decision, that decision must stand even if the record could also support a contrary conclusion. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 473 (6th Cir. 2016) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). This Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). However, the substantial-evidence standard does not condone "a selective reading of the record" and instead requires the ALJ to have considered evidence that "'fairly detracts'" from her decision. *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)).

The Court also reviews the ALJ's decision for procedural fairness, determining whether the ALJ properly followed the law. *Miller*, 811 F.3d at 833. "The Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Failure to follow agency rules and regulations therefore "'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Id.* (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)). "The failure to comply with the agency's rules warrants a remand unless it is harmless error." *Id.* at 723 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545–46 (6th Cir. 2004)).

## B. Administrative Evaluation of Disability Claims

Title II is an insurance program that "'provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need.'" *Furlo v. Colvin*, No. 14-cv-14392, 2016 WL 146482, at *8 (E.D. Mich. Jan. 13, 2016) (quoting *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988)). To receive DIB, Berry must establish that she had a "disability," which means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[,]" 42 U.S.C. § 423(d)(1)(A), on or prior to her last insured date, *Manson v. Comm'r of Soc. Sec.*, No. 12-11473, 2013 WL 3456960, at *2 n.1 (E.D. Mich. July 9, 2013) (citing 42 U.S.C. § 423(c) and 20 C.F.R. § 404.130). Berry's last insured date is December 31, 2019, well beyond the date that the ALJ denied Berry's claim for DIB. Therefore, the relevant period of analysis for Berry's claim is April 23, 2014, her alleged onset date, through September 11, 2017, the date of the ALJ's decision. (AR 15, 26.)

ALJs use a five-step analysis to resolve the question of disability:

> At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity; if the claimant is performing substantial gainful activity, then the claimant is not disabled. [20 C.F.R. § 404.1520(a)(4).] At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is "severe." *Id.* If the claimant does not have a severe impairment or combination of impairments, then the claimant is not disabled. *Id.* At step three, the ALJ must determine whether the claimant's impairment meets an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled. *Id.* Otherwise, the ALJ will proceed to the fourth step, where the ALJ must assess the claimant's residual functional capacity and past work. *Id.* If the claimant can still perform his or her past relevant work, the claimant is not disabled. *Id.* If the claimant cannot perform past relevant work, the ALJ must determine whether the claimant can make an adjustment to other work at step five. *Id.* If the claimant cannot make the adjustment, the ALJ will find the claimant disabled. *Id.*

*Miller*, 811 F.3d at 835 n.6. Berry bears the burden through step four, but, at step five, the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate [Berry's] residual functional capacity [RFC] and vocational profile."[2] *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). The agency may carry its burden at step five by relying on the medical vocational guidelines, also known as "the grid." *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010) (explaining that the grid is designed to simplify decision-making by directing a finding of disabled or not disabled where certain common patterns of vocational factors are present). However, the agency may also carry its burden using VE testimony. *Id.*; *see also Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (explaining that a VE will be able to analyze an individual's particular RFC to "determine the size of the remaining occupational base, cite specific jobs within the individual's [RFC], and provide a statement of the incidence of those jobs in the region of the individual's residence or in several regions of the country").

## IV.    Analysis

Berry raises four issues on appeal.[3] First, she argues that the ALJ failed to properly weigh the medical opinions in the record, elevating the opinions of two consulting physicians and a one-time examining physician from 2015 over the more recent opinions of an examining physician and her treating physician. Second, Berry argues that the ALJ erred by not considering all of Berry's impairments in crafting her residual functional capacity. Third, Berry argues that the ALJ should have found that Berry's impairments met or medically equaled the SSA's listings for endocrine

---

[2]      "An individual's residual functional capacity is the most the individual can still do despite his or her impairment-related limitations." SSR 16-3P, 2016 WL 1119029, at *11 (Mar. 16, 2016).

[3]      The Commissioner rightly states that what Berry presents as a fifth argument (Doc. No. 19-1) "is a summary of the prior arguments" (Doc. No. 20, PageID# 1414 n.1).

disorders and spinal disorders, rendering Berry disabled. Finally, Berry argues that the ALJ who denied her claim was not appointed consistent with the Appointments Clause of the Constitution. For the reasons offered below, none of these arguments warrants reversal of the ALJ's decision.

### A. Weighing of the Medical Opinions

There are six different medical opinions relevant to this appeal. On April 11, 2015, at the request of the SSA, Dr. Thomas Dake conducted a physical examination of Berry. (AR 21, 822–827.) Dr. Dake noted that Berry's obesity did not impact her ability to stand or walk or prevent her from engaging in activities of daily living. (AR 824.) Dr. Dake also documented a full range of motion in Berry's hands, "5/5 grip strength[,]" and "[n]ormal gross and fine manipulation." (*Id.*) The doctor performed a straight leg raise test,[4] which was negative when Berry was sitting; Berry complained of hip pain when the test was performed while she was supine. (*Id.*) Dr. Dake also noted that Berry had a full range of motion in her lumbar spine without pain and that she had "5/5 muscle strength in the large and small muscles in [her] lower extremities." (*Id.*) Berry's neurological examination was also unremarkable: Dr. Dake described her reflexes, sensation, and gait as normal. (AR 825.) Based on the examination, Dr. Dake concluded that Berry "has the ability to lift up to 30 lbs frequently and carry up to 30 lbs occasionally. She has [the] ability to sit frequently, stand frequently, and walk frequently with breaks." (*Id.*)

On June 10, 2015, Dr. Russell Wallace, a state agency medical consultant, reviewed Berry's file—including Dr. Dake's opinion—and made findings regarding Berry's residual functional capacity. (AR 22, 71–82.) Dr. Wallace opined that Berry could frequently lift and carry

---

[4] "The straight leg raise, also called Lasègue's sign, Lasègue test or Lazarević's sign, is a test done during a physical examination to determine whether a patient with low back pain has an underlying herniated disc, often located at L5 (fifth lumbar spinal nerve)." *Straight leg raise*, Wikipedia, https://en.wikipedia.org/wiki/Straight_leg_raise (last visited August 20, 2019).

8

up to ten pounds, occasionally lift and carry up to twenty pounds, and sit, stand, and walk for six

hours in an eight-hour workday. (AR 77–78.) He also found that Berry could frequently crawl,

crouch, and climb ramps and stairs; occasionally bend at the waist; and never climb ropes, ladders,

or scaffolds. (AR 78.)

On November 20, 2015, Dr. Nisha Singh, another state agency medical consultant,

reviewed Berry's file—which, by that time, included several medical records from Berry's

treatment with Dr. Esmeraldo Herrera, her primary care doctor—and provided an RFC assessment

of Berry that largely mirrored the assessments of Doctors Dake and Wallace. (AR 21, 84–96.)

Dr. Singh opined that Berry could frequently lift and carry up to ten pounds, occasionally lift and

carry up to twenty pounds, stand and/or walk for four hours in an eight-hour workday, and sit for

six hours, with the stipulation that Berry "[m]ust periodically alternate [between] siting and

standing to relieve pain and discomfort." (AR 92.) Dr. Singh also found that Berry could frequently

crawl, crouch, kneel, and balance; occasionally stoop and climb ramps and stairs; and never climb

ropes, ladders, or scaffolds. (AR 92–93.)

On July 26, 2016, Berry's primary care provider Dr. Herrera wrote the following letter

regarding Berry's back problems:

> To Whom It May Concern:
>
> Patient presents with increasing low back pain; an MRI of lumbar spine
> dated 10/25/2007 showed mild to moderate spondylosis at L4-5 and L5-S1, left
> extraforaminal protrusion and annular tear with potential irritation of the exiting
> left L4 nerve root. A functional limitation was done in which patient reports she is
> able to get in and out of a car, perform activities of daily living and walk. Patient
> reports she is not able to kneel, walk 5 to 10 blocks, or walk an unlimited distance.
> Patient reports she finds it difficult to climb stairs, exercise, go up and down stairs
> or put on socks and shoes.

(AR 950.) Dr. Herrera refused to complete a more formal assessment of Berry's RFC in support

of her benefits application, despite Berry's requests that he do so. (Doc. No. 19-1.)

As a result, Berry sought an examination and RFC assessment from Dr. Stephen Collier. (Doc. No. 19-1.) On May 26, 2017, Dr. Collier conducted a physical examination during which Berry reported that she could not kneel or stoop, walk more than fifty feet without resting, or exercise to promote weight loss. (AR 22–23, 1303.) Dr. Collier documented a positive bilateral straight leg raise test; palpable paraspinal spasm and tenderness at L3-S1; limited range of motion in Berry's shoulders; and decreased sensitivity to pinprick, light touch, and proprioception. (AR 1304.) He also noted that a "previous MRI" showed nerve root compression at L4 and moderate L4-L5, L5-S1 left foraminal protrusion and annular tear with potential irritation of the left L4 nerve root. (AR 1303.) Dr. Collier opined that Berry could occasionally lift and carry up to ten pounds, but never more than that. (AR 1305.) He also limited Berry to two hours of sitting, standing, and walking, respectively. (AR 1306.) Dr. Collier found that Berry could never crawl, crouch, kneel, stoop, balance, or climb ladders, scaffolds, or ramps. (AR 1308.) However, he also opined that Berry could ambulate without using a wheelchair, walker, or two canes; climb a few steps at a reasonable pace with the use of a single hand rail; occasionally reach overhead; and frequently use her hands for handling, fingering, and feeling. (AR 1309–10.)

Berry then forwarded Dr. Collier's assessment to Dr. Herrera, and asked Dr. Herrera to comment on it. (AR 1312.) On June 2, 2017, Dr. Herrera wrote that he agreed with Dr. Collier's findings. (AR 1314.)

In her September 11, 2017 opinion, the ALJ provided the following analysis of those medical opinions:

> As for the opinion evidence, great weight is given to the state agency medical consultants Dr. Wallace and Dr. Singh since they had full access to the claimant's treatment records and programmatic expertise with the Social Security disability program. Their findings are consistent with this decision's residual functional capacity assessment. Even though their opinions were given in 2015, the subsequent medical evidence did not contradict their findings; the claimant's

medical records were routine and consistent with no worsening or exacerbations of any of her physical impairments. As such, the opinions of both doctors are attributed substantial merit in determining the claimant is capable of light work activities.

Considerable weight is given to Dr. Dake because he was able to personally examine the claimant and assessed her to be capable of light physical exertion, which coincides with the decision's residual functional capacity. Moreover, Dr. Dake's findings are mostly consistent with the medical evidence of record and the claimant's testimony and stated activities of daily living. Thus, Dr. Dake's opinion is highly convincing in finding the claimant not disabled.

Little weight is given to Dr. Collier (Exhibit 19F/3-9) because his medical source statement is overly restrictive and not supported by the medical evidence of record. Specifically, the claimant's treatment records at Family Health Group over the course of three years were basic and routine. Her physical examinations were mostly normal, she was treated with medications, and her physical impairments were stable and controlled. Thus, the undersigned gives little considerations [sic] to Dr. Collier's opinion that the claimant is significantly limited in performing daily or work activities. For this reason, Dr. Herrera's June 2017 letter is also accorded little weight.

Dr. Herrera's July 2016 letter is given little weight because he bases it on an MRI that was taken seven years before the claimant's alleged onset date and relied on the claimant's subjective complaints to formulate the functional limitation report. Since the letter is not based on any recent, objective examination or diagnostic imaging, the undersigned gives it little merit.

(AR 23–24.)

Berry argues that the ALJ should have adopted Dr. Herrera's opinions as controlling and that the ALJ failed to provide good reasons for not doing so. Berry also argues that the ALJ erred by allowing the 2015 opinions of the state agency examining and consulting physicians to outweigh those of Dr. Collier and Dr. Herrera. Neither argument is persuasive.

### 1. Dr. Herrera's Opinions and the Treating Physician Rule

The treating physician rule provides that, when the opinion of a treating physician[5] concerning the nature and severity of a claimant's condition or RFC is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the ALJ must give that opinion controlling weight in her analysis. 20 C.F.R. § 404.1527(c)(2); *see also Gentry*, 741 F.3d at 727 (explaining that a treating physician's opinion concerning a claimant's RFC is also entitled to deference). The rationale behind the rule is that a treating physician's opinion is most likely "to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 404.1527(c)(2).

If a treating physician's opinion is not entitled to controlling weight because it is not well-supported by medically acceptable evidence and techniques or is inconsistent with the substantial evidence in the record, it should not be automatically rejected entirely. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). In weighing a non-controlling treating physician's opinion, the ALJ must consider the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record, the specialization of the treating source, and any other relevant factors. *Gentry*, 741 F.3d at 727; 20 C.F.R. § 404.1527(c)(2)–(6). "The ALJ need not perform an exhaustive, step-by-step analysis

---

[5]    A treating physician is one who "provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1527(a)(2).

of each factor; she need only provide 'good reasons' for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of the opinion." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017). Such reasons must be "supported by the evidence in the case record[ ] and . . . sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

With respect to Dr. Herrera's June 2, 2017 letter adopting the opinion of Dr. Collier, the ALJ provided good reasons for declining to give that letter controlling weight in her analysis: that the RFC that the letter endorsed was overly restrictive and inconsistent with the medical evidence in the record, including Dr. Herrera's own treatment notes from 2014 through 2017. (AR 24.) The ALJ characterized Dr. Herrera's treatment records during that time as "basic and routine[,]" noting that Berry's physical examinations were "mostly normal" and that Berry's conditions were stabilized with medication. (*Id.*) Berry does not point to anything in the record to rebut that finding and, instead, argues only generally that the ALJ failed to follow the treating physician rule. (Doc. No. 19-1.)

Substantial evidence supports the ALJ's conclusion that the RFC that Dr. Collier and Dr. Herrera adopted is at odds with the larger record. From April 2016 through May 2017, Berry regularly presented to Dr. Herrera for treatment of back pain and diabetes. Berry often rated her pain near a ten on a ten-point scale (AR 534, 557, 829, 856, 870), and Dr. Herrera regularly noted that Berry had lumbar pain during the straight leg raise test (AR 522, 537, 840, 853, 864, 880, 901, 923, 939, 1151 ). However, as the ALJ found in a prior section of her opinion, Berry never received injections for her back pain, underwent surgery, or received physical therapy or chiropractic care. (AR 23.) Instead, Dr. Herrera treated Berry with medication, which, according to his notes,

13

relieved her symptoms of back pain. (AR 829, 850, 856, 904, 912, 929, 934.) Dr. Herrera also repeatedly reported that Berry's diabetes and associated neuropathy were stable and being managed through diet, fingerstick blood sugar testing, insulin, and other medication. (AR 829, 834, 904, 909, 912, 917, 1093, 1098, 1108, 1114, 1131, 1136, 1139, 1144, 1146, 1151, 1257, 1262, 1264, 1269, 1271, 1275.) Further, the ALJ rightly found that Berry's physical examinations were mostly normal—Dr. Herrera regularly noted that Berry was negative for muscle weakness, numbness of the extremities, or gait disturbance. (AR 522, 527, 531, 537, 544, 840, 847, 859, 864, 876, 900, 908, 916, 938, 1082, 1089, 1097, 1104, 1112, 1120, 1128, 1135–36, 1142, 1260, 1267, 1274, 1288.) That was the case even after Berry was admitted to the emergency room in December 2016 and January 2017 after falling in her home. (1285, 1288, 1291, 1295.) The findings in Dr. Herrera's treatment notes are at odds with the severe restrictions on walking and lifting found in the RFC that Dr. Collier and Herrera adopted for Berry. The ALJ provided good reasons for declining to give Dr. Herrera's June 2, 2017 letter controlling weight. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 631 (6th Cir. 2016) (explaining that the ALJ provided good reasons for discounting restrictive treating source opinion where "the records indicate[d] [claimant] received only conservative treatment for her ailments").

The ALJ also provided good reasons for declining to adopt Dr. Herrera's July 26, 2016 letter as controlling. The ALJ emphasized that the letter was based on Berry's reported symptoms and a seven-year-old MRI rather than "recent, objective examination or diagnostic imaging[,]" implying that, to the extent it offered an assessment of Berry's RFC, the letter was not based on medically acceptable diagnostic techniques. (AR 24.) Where, as here, the ALJ has found that the claimant's description of her symptoms is not entirely consistent with the record (AR 23), a treating physician's reliance on the claimant's subjective complaints in forming an RFC assessment is a

good reason to decline to give that assessment controlling weight.[6] *See Stiltner v. Comm'r of Soc. Sec.*, 244 F. App'x 685, 689 (6th Cir. 2007); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007). The same is true of a treating physician's reliance on an outdated MRI. *See Thomas v. Barnhart*, 105 F. App'x 715, 717 (6th Cir. 2004) (holding that ALJ provided good reasons for declining to adopt treating physician's opinion based, in part, on six-year-old X-ray when a current X-ray showed no structural problem). The ALJ thus provided good reasons for declining to give Dr. Herrera's opinions controlling weight.

Finally, the ALJ also provided good reasons for the giving those opinions little weight. The ALJ considered the supportability of those opinions and their consistency with the record. Although she did not explicitly discuss other relevant factors, her reasoning shows that she considered them. In noting that Berry "was consistently treated at Family Health Group by [Dr. Herrera] between 2014 and 2017 for diabetes, neuropathy, obesity, asthma, hypertension, and degenerative disc disease of the lumbar spine" (AR 21) and summarizing the relevant records (AR 22–23), the ALJ demonstrated that she considered the length, nature, and extent of the treatment relationship; the frequency of examination; and Dr. Herrera's specialization. *See Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 248 (6th Cir. 2016) (holding that the reasons the ALJ offered for finding the treating physician's opinion non-controlling demonstrated that the ALJ applied the appropriate regulatory factors); 20 C.F.R. § 404.1527(c)(2)–(6). The ALJ did not violate the treating physician rule.

---

[6]     The ALJ's finding regarding the inconsistency of Berry's alleged symptoms with the medical record is entitled to "special deference[.]" *Biestek*, 880 F.3d at 788. Other than stating in conclusory fashion that she provided credible, "honest[,] and consistent testimony" (Doc. No. 19-1, PageID# 1402), Berry has not offered anything to rebut that finding.

### 2.    The Remaining Medical Opinions

When a treating physician's opinion has been deemed non-controlling, the same factors used to weigh that opinion—the nature of the treatment relationship, specialization, consistency, and supportability—are relevant to determining the weight of any other medical opinions. 20 C.F.R. § 404.1527(c). In general, a treating source will be given more weight than a source who has examined the claimant but not treated her regularly, and an examining source will be given more weight than a consulting source who has never examined the claimant. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). Put differently, "'[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker.'" *Id.* (alteration in original) (quoting SSR 96–6p, 1996 WL 374180, at *2 (July 2, 1996)). However, state agency medical consultants are considered "'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act,'" *Miller*, 811 F.3d at 834 (alteration in original) (quoting SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)); therefore, in "'appropriate circumstances,'" a consulting physician's opinion may be entitled to greater weight than that of a treating or examining source. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996)).

Berry misconstrues these rules when she argues, citing *Blakley*, that "[a] non-examiner's form statements made without all the records have little value, and are not 'substantial evidence.'" (Doc. No. 19-1, PageID# 1407.) The *Blakley* court did not establish "a blanket prohibition on an ALJ's adoption of a non-examining source opinion, where that source has not reviewed the entire record." *Kepke*, 636 F. App'x at 632. Rather, the court held that, before an ALJ elevates a non-examining source's opinion that is not based on a complete review of the record over the opinion of a treating physician, the ALJ must provide "'some indication'" that she considered the entire

16

record and the incompleteness of the non-examining opinion. *Blakley*, 581 F.3d at 409 (quoting *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007)). "In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke*, 636 F. App'x at 632.

That indication is present here, and substantial evidence supports the ALJ's weighing of the non-treating sources' opinions. The ALJ explicitly considered the fact that Dr. Wallace and Dr. Singh did not have an opportunity to review the whole record: "Even though their opinions were given in 2015, the subsequent medical evidence did not contradict their findings; [Berry's] medical records were routine and consistent with no worsening or exacerbations of any of her physical impairments." (AR 23.) Although the ALJ did not make a similar finding with respect to Dr. Dake, the RFC she adopted was more restrictive than his, showing that she subjected his opinion to scrutiny.[7] *See Kepke*, 636 F. App'x at 632 (holding that "the ALJ's decision indicate[d] that he subjected [the non-examining physician's] opinion to at least some scrutiny, because the ALJ disagreed with [the non-examining physician's] assessment of [claimant's] limitations in her activities of daily living and social functioning, and applied even greater restrictions in this area than [the non-examining physician] opined were appropriate"). Finally, given Berry's record of conservative treatment with Dr. Herrera, substantial evidence supports the ALJ's choice to give greater weight to the less-restrictive opinions of the state agency doctors than to those of Dr. Collier and Dr. Herrera.[8]

---

[7]    The ALJ found that Berry can occasionally lift and carry no more than twenty pounds, contradicting Dr. Dake's opinion that Berry can frequently lift and carry thirty pounds.

[8]    Berry also argues that the opinions of the state agency physicians "are only entitled to weight to the extent they are offered within their specialty, and they are not inconsistent with the treating physician's opinions." (Doc. No. 19-1, PageID# 1406.) But none of the cases Berry cites to support that proposition is relevant to this case. In *Tuohy v. Secretary of Health and Human Services*, the court found that the ALJ had erred by elevating the testimony of a medical advisor over the opinion of a treating physician where that opinion was "not directly contradicted by any

## B.        Crafting Berry's RFC

Berry argues that "the ALJ failed to consider all of [her] impairments and conditions, failed to craft a proper [RFC] statement, and failed to credit the vocational expert's testimony that [her] impairments would preclude any work." (Doc. No. 19-1, PageID# 1408.) Berry does not specify which "impairments and conditions" the ALJ ignored.[9] But she does point out that, when the ALJ

---

medical evidence in the record" and was therefore entitled "to significant or complete deference." No. 93-1814, 1994 WL 454880, at *5–7 (6th Cir. Aug. 22, 1994). *Shelman v. Heckler* involved a similar fact pattern. 821 F.2d 316, 320–21 (6th Cir. 1987) (holding that ALJ had erred by adopting the opinion of a non-examining physician after failing "to set forth some basis for rejecting [the treating physicians'] opinions"). Here, unlike those cases, the ALJ provided good reasons for not adopting Dr. Herrera's opinions before giving greater weight to the opinions of the state agency physicians. Finally, in *Sherril v. Secretary of Health and Human Services*, the Sixth Circuit reversed the district court, which had "relied heavily upon the ambivalent testimony of a non-treating physician" not trained in psychiatry "to the exclusion of evidence offered by psychiatrists who . . . stated that [the claimant was] disabled because of her psychiatric impairment." 757 F.2d 803, 805 (6th Cir. 1985). The court concluded that the non-treating physician's ambivalent testimony did not constitute substantial evidence establishing the nonexistence of the claimant's psychiatric impairments. *Id. Sherril* is distinguishable because none of the state agency physicians offered ambivalent opinions here. Finally, all of the opinions Berry cites predate *Blakley* and the standard that is relevant when an ALJ elevates a non-treating physician's opinion not based on a complete review of the record over that of the treating physician.

[9]        Berry's only specific reference to a condition that the ALJ's RFC analysis excludes comes in the background section of her opening brief. (Doc. No. 19-1.) There, she points out that the ALJ dismissed Berry's kidney impairments as non-severe because they affected her only between November 2016 and April 2017 and did not meet "the durational requirement of being a severe impairment since [they] did not appear to last nor [were] expected to last for twelve months and more." (AR 18.) Berry argues that "[t]his is no longer a bar to a finding of disability because it is now nearly two years later" and requests that the Court "remand for full consideration of this severe condition." (Doc. No. 19-1, PageID# 1394.)

Berry is essentially requesting a remand on the grounds that there is now new evidence that would show that her kidney disease currently meets the durational requirement and is therefore severe. Sentence six of 42 U.S.C. § 405(g) authorizes the Court to remand a case to the Commissioner for consideration of additional evidence, but only if the claimant shows that the evidence is "new" and "material" and "there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g); *see Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (holding that "the burden of showing that a remand is appropriate is on the claimant"). Evidence is considered "'material' only if there is 'a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence.'" *Foster*, 279 F.3d at 357 (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). In requesting a remand for reconsideration of her kidney

18

presented the vocational expert (VE) with a hypothetical individual with the "set of limitations affirmed by [Dr. Herrera,]" the VE opined that the individual would not be able to find any work in the national economy and would therefore be considered disabled. (*Id.*) Berry objects that, rather than adopting Dr. Herrera's set of limitations as Berry's RFC, the ALJ found Berry capable of performing light work.

This argument is a restatement of Berry's claim that the ALJ violated the treating physician rule by declining to adopt Dr. Herrera's opinions. For the reasons discussed above, the ALJ provided good reasons for her decision to accord Dr. Herrera's opinions little weight and therefore did not err by adopting an RFC that departed from those opinions.

## C. The Listings

The ALJ provided the following analysis of whether Berry's impairments met or medically equaled the criteria of one of the SSA's listings:

> The record fails to establish that the claimant has an impairment or combination of impairments that meets or medically equals the criteria of any listed impairment. The medical evidence of record does not document signs, symptoms, and/or laboratory findings indicating any impairment or combination of impairments severe enough to meet the criteria of any listed impairment. No treating, examining, or non-examining medical source has mentioned findings or rendered an opinion that the claimant's impairments, singly or in combination, medically equaled the criteria of any listed impairment. Specific consideration has been given to the applicable sections of 9.00 *Endocrine Disorders* and 11.14 *Neurological Disorders* of the listed impairments. In addition, SSR 02-1p *Obesity* was adequately considered, both singularly and in combination with the claimant's underlying impairments.

---

disease, Berry has stated only that time has passed; she has not described any of the evidence that she would seek to introduce on remand. In the absence of such a description, she has failed to meet her burden to show that any of the new evidence relating to her kidney disease is material. Remand on this basis is not appropriate.

(AR 20.)

Berry argues that "[t]he ALJ's discussion of the listings is almost nonexistent," and that, in fact, she met the criteria for Listings 9.00 and 11.14. (Doc. No. 19-1, PageID# 1403.) Berry also argues that she met the criteria for Listing 1.04, which relates to spinal disorders, and that the ALJ did not even discuss that listing.[10] (Doc. No. 19-1.) The Commissioner responds that Berry has not met her burden of showing that she did meet the criteria of any of those listings. (Doc. No. 20.)

The Listing of Impairments "describes[,] for each of the major body systems[,] impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Within each listing, the SSA specifies "the objective medical and other findings needed to satisfy the criteria of that listing." *Id.* § 404.1525(c)(3). To be found disabled under the listings, a claimant must demonstrate that she meets the diagnostic description of a given impairment, as well as all of the criteria that follow that description. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 653 (6th Cir. 2009) ("A claimant must satisfy all of the criteria to meet the listing."); 20 C.F.R. § 404.1525(c)(3). The claimant must also satisfy the "duration requirement[,]" 20 C.F.R. § 404.1525(c)(3), which, unless the SSA specifies otherwise, requires a showing that the impairment "has lasted or can be expected to last for a continuous period of at least 12 months," *id.* § 404.1525(c)(4).

_____

[10] Berry also asserts, in conclusory fashion, that she should "have been found disabled pursuant to Social Security Ruling 96-9p and the Medical Vocational Guidelines, Rule 2.00, Appendix 2 to Subpart P of Part 404 of the Act." (Doc. No. 19-1, PageID# 1403.) Berry does not explain how she has met the relevant criteria of either rule. She has therefore waived this argument. *See Bailey v. Colvin*, No. 3:15-cv-00815, 2016 WL 4559972, at *7 (M.D. Tenn. Sept. 1, 2016) (collecting cases for the proposition that an undeveloped argument is waived), *report and recommendation adopted by* 2016 WL 572455 (M.D. Tenn. Sept. 30, 2016).

20

Although the regulations require the ALJ to find a claimant disabled if she meets a listing, "neither the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'" *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (quoting *Sheeks v. Comm'r of Soc. Sec.*, 544 F. Appx. 639, 641 (6th Cir. 2013)). Rather, the ALJ should discuss a particular listing "where the record raises 'a substantial question as to whether [the claimant] could qualify as disabled' under [that] listing." *Id.* (first alteration in the original) (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir.1990)). In analyzing whether a claimant's conditions meet or medically equal one of the listings, an ALJ must "actually evaluate the evidence, compare it to [the relevant listing(s)], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). However, in determining whether the ALJ has met that burden, courts in this circuit have looked to the entirety of the ALJ's opinion and not just the step-three analysis. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (finding that "the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three"); *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (noting that "[t]he language of 20 C.F.R. § 404.1526 does not state that the ALJ must articulate, at length, the analysis of the medical equivalency issue[,]" and finding that ALJ's minimal step-three analysis was adequate where "[t]he ALJ described evidence pertaining to all impairments, both severe and non-severe, for five pages earlier in his opinion and made factual findings").

An ALJ's failure to provide an adequate step-three analysis is harmless when the claimant has not shown that her impairments met or medically equaled the severity of any listed impairment. *Forrest*, 591 F. App'x at 366. Therefore, unless the claimant "point[s] to specific evidence that demonstrates [she] reasonably could meet or equal every requirement of the listing[,]" the ALJ

does not commit reversible error by failing to properly analyze that listing. *Smith-Johnson*, 579 F.

App'x at 432. Although the ALJ's step-three analysis was quite limited, her opinion as a whole

supports her step-three conclusion and, regardless, Berry has not pointed to evidence

demonstrating that she met or medically equaled all of the criteria of the listings she invokes. Any

error at step three is therefore harmless.

### 1. Listings 9.00 and 11.14

Listing 9.00 pertains to endocrine disorders, including diabetes. *See* 20 C.F.R. § 404, subpt.

P, app. 1, § 9.00. This listing instructs the ALJ to consider how the claimant's diabetes affects

other body systems. For example, the regulations recognize that diabetics can suffer from

"longstanding abnormally high levels of blood glucose" which can disrupt nerve and blood vessel

functioning and lead to "diabetic peripheral and sensory neuropathies[,]" considered under Listing

11.00. *Id.* § 404, subpt. P, app. 1, § 9.00(B)(5)(a)(ii).

Listing 11.14, which Berry invokes, describes peripheral neuropathy and contains the

following criteria:

> A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or
>
> B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
>
>> 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>>
>> 2. Interacting with others (see 11.00G3b(ii)); or
>>
>> 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>>
>> 4. Adapting or managing oneself (see 11.00G3b(iv)).

*Id.* § 404, subpt. P, app. 1, § 11.14.

Berry does not provide any argument specific to the above criteria or mention the criteria at all. Instead, she states that she suffers from "chronic high blood sugar; chronic infections; falls; and neuropathies severely affecting the hands and feet." (Doc. No. 19-1, PageID# 1403.) She then cites her testimony and Dr. Herrera's treatment records, without any discussion, to support her claim that she suffers from "listing-level diabetes with neuropathy." (*Id.*)

Substantial evidence supports the ALJ's finding that Berry did not meet the criteria for diabetic peripheral neuropathy. As the ALJ emphasized, none of the physicians who examined Berry found that she met the criteria of any listing. In fact, the opinions of Dr. Collier and Dr. Herrera—which Berry argues the ALJ should have adopted—effectively rule out a finding that Berry meets the criteria of Listing 11.14(A). Those doctors opined that Berry can ambulate without using a wheelchair, walker, or two canes (AR 1310), which precludes a finding that Berry is extremely limited in her ability to balance while standing or walking. *See* 20 C.F.R. § 404, subpt. P, app. 1, § 11.00(D)(2)(b) (explaining that an extreme limitation of a claimant's ability to maintain balance in a standing position means that the claimant is "unable to maintain an upright position while standing or walking without the assistance of another person or an assistive device, such as a walker, two crutches, or two canes"). They also concluded that Berry is capable of lifting and carrying up to ten pounds, occasional reaching, and frequent handling, fingering, and feeling (AR 1305, 1309)—findings that are inconsistent with an extreme limitation in Berry's ability to use her upper extremities. *See id.* § 404, subpt. P, app. 1, § 11.00(D)(2)(c) (providing that an inability to use the upper extremities means that the claimant has "a loss of function of both upper extremities (including fingers, wrists, hands, arms, and shoulders) that very seriously limits [the claimant's] ability to independently initiate, sustain, and complete work-related activities involving fine and gross motor movements"). Although Berry testified that she can "hardly get up off the chair or the

23

couch to walk" (AR 43), that does not support the conclusion that she can only do so with "the assistance of another person or the use of an assistive device, such as a walker, two crutches, or two canes[,]" as is required to find that Berry is extremely limited in her ability to stand up from a seated position, 20 C.F.R. § 404, subpt. P, app. 1, § 11.00(D)(2)(a). Further, as the ALJ emphasizes in her step-four analysis, Berry's physical examinations with Dr. Herrera were repeatedly unremarkable and, in fact, documented the absence of muscle weakness, numbness in the extremities, or disturbances to her gait, which provides independent support for the ALJ's conclusion that Berry did not meet the 11.14(A) criteria.

With respect to the 11.14(B) criteria, there is no indication that Berry has a marked limitation in any of the four listed areas of mental functioning. The ALJ discussed those areas in depth, finding that Berry either had a mild limitation or no limitation at all. (AR 19.) The ALJ concluded that, while Berry's testimony might have suggested more severe impairment, that testimony was inconsistent with the other evidence in the record. (*Id.*) The ALJ's findings with respect to Berry's testimony receive "special deference[,]" *Biestek*, 880 F.3d at 788, and, in the absence of any argument from Berry explaining why the ALJ's analysis of her mental functioning was in error, that analysis adequately supports the ALJ's conclusion that Berry did not meet the criteria of Listing 11.04(B).

Finally, Berry's citation of *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007), to support her position, is inapt. (Doc. No. 19-1.) In that non-binding case, the court noted that "the ALJ is not always required to do an exhaustive point-by-point discussion" at step three, but found that the ALJ had committed reversible error by failing to "identify the listed impairment for which [the claimant's] symptoms fail[ed] to qualify," or "provide any explanation as to how she reached the conclusion that [the claimant's] symptoms [were] insufficiently severe to meet any listed

impairment." *Id.* at 448. Here, the ALJ stated that she had considered Listings 9.00 and 11.14 and added that none of the physicians who examined Berry found that she met a listing. *Audler* is therefore distinguishable. Regardless, even if the ALJ did err by conducting a limited step-three analysis, that error is harmless because Berry has failed to point to evidence showing that she met or medically equaled all of the criteria of Listings 9.00 and 11.14.

### 2. Listing 1.04

Listing 1.04 pertains to disorders of the spine—including degenerative disc disease and spinal stenosis—that compromise a nerve root or the spinal cord and are associated with:

A.     Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);or

B.     Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C.     Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § 404, subpt. P, app. 1, § 1.04. Again, Berry does not discuss or even cite the criteria associated with this listing. Rather, her argument is limited to stating that Dr. Collier's and Dr. Herrera's opinions documented "[degenerative disc disease] and lumbar spondylosis with myelopathy; radiating pain; positive straight leg raising; and, sensory loss." (Doc. No. 19-1, PageID# 1403.) Based on those findings, Berry argues, without elaborating, that "Dr. Collier's report does indeed include an opinion that [her] spinal disorder meets a listing." (*Id.*)

The record does not raise a substantial question regarding whether Berry met Listing 1.04. Even if the findings that Berry cites from Dr. Collier's and Dr. Herrera's opinions were accepted

as true, those findings do not meet all of the criteria under Listing 1.04. Further, as the ALJ explained in concluding that the opinions of Dr. Collier and Dr. Herrera were entitled to little weight, Dr. Herrera's physical examinations of Berry were largely normal, repeatedly noting that Berry did not demonstrate muscle weakness, numbness in her extremities, or disturbances in her gait. *See Smith-Johnson*, 579 F. App'x at 435 (explaining that, in considering whether a medical source opinion relied on by the claimant raises a substantial question regarding a listing, the court may look to the ALJ's analysis of that opinion at another step of the ALJ's decision). These observations, over the course of the relevant time period, are inconsistent with a finding that Berry experienced "atrophy with associated muscle weakness or muscle weakness" or that she was unable to "ambulate effectively" and, therefore, the record did not present a substantial question concerning whether Berry met Listing 1.04(A) or (C). 20 C.F.R. § 404, subpt. P, app. 1, § 1.04(A), (C). There is also no indication that Berry suffered from spinal arachnoiditis; therefore, the ALJ did not err by failing to discuss the criteria of Listing 1.04(B). *Id.* § 404, subpt. P, app. 1, § 1.04(B). Berry has failed to point to evidence demonstrating that she meets or medically equals the criteria of Listing 1.04, and therefore the ALJ did not commit reversible error by failing to discuss that listing.

### D. The Appointments Clause

The Appointments Clause provides that "only the President, 'Courts of Law,' or 'Heads of Departments' can appoint 'Officers [of the United States].'" *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2050 (2018) (quoting U.S. Const. art. II, § 2, cl. 2). In *Lucia*, the Supreme Court held that ALJs of the Securities and Exchange Commission were "Officers" within the meaning of the Clause and that their appointment by staff members, rather than the Commission itself, was unconstitutional. *Id.* at 2051, 2055. The Court further held that, because the plaintiff made a "timely challenge" to the

constitutional validity of the ALJ who decided his case—raising the issue before the Commission and then pressing it through the federal courts—he was entitled to a new hearing before a different constitutionally appointed ALJ. *Id.* at 2055.

After *Lucia*, Appointments Clause challenges to ALJs have proliferated. The Sixth Circuit recently applied *Lucia* to hold that ALJs within the Federal Mine Safety and Health Review Commission are inferior officers subject to the Clause. *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 679 (6th Cir. 2018). Concerned by the potential application of *Lucia* to social security ALJs, "on July 16, 2018[,] the Acting Commissioner of Social Security ratified the appointments of [SSA] ALJs and approved those appointments as her own." SSR 19-1P, 2019 WL 1324866, at *2 (March 15, 2019). Despite that ratification, many social security claimants, like Berry, have brought as-applied Appointments Clause challenges to ALJs who decided claims before *Lucia*, focusing not on the facial validity of the statutes governing appointment of those ALJs, 5 U.S.C. § 3105; 42 U.S.C. §§ 902(a)(7), 904(a)(1), but on how those statutes have been applied. (Doc. No. 19-1.) Berry argues that, because *Lucia* was not decided until after her claim had been denied at the administrative level, her first opportunity to raise her Appointments Clause challenge was in this Court, which she did by filing her amended complaint. (*Id.*) Berry requests a remand so that her claim can be heard by a constitutionally appointed ALJ.

The Commissioner does not take on the merits of Berry's Appointments Clause challenge, arguing instead that Berry could have raised the issue at the administrative level and that her failure to do so amounts to waiver. (Doc. No. 20.) This argument stems from the general principle that "the crucible of administrative review ensures that the petitioner's case presents a true constitutional dispute before the Judiciary steps in to decide those weighty issues." *Jones Bros.*, 896 F.3d at 676; *see also Fortin v. Comm'r of Soc. Sec.*, 372 F. Supp. 3d 558, 563 (E.D. Mich.

2019) (explaining that a fundamental tenet of administrative law is "that orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction" (quoting *United States v. L.A. Tucker Truck lines, Inc.*, 344 U.S. 33, 73 (1952))), *appeal docketed*, No. 19-1581 (6th Cir. Jan. 16, 2018). "Administrative exhaustion is thus typically required so long as there is 'the possibility of some relief for the action complained of,' even if it is not the petitioner's preferred remedy." *Jones Bros.*, 896 F.3d at 676 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

As the Commissioner points out (Doc. No. 29), the vast majority of courts have found that a social security claimant waives an Appointments Clause challenge by failing to raise it at the administrative level. *See Hutchins v. Berryhill*, 376 F. Supp. 3d 775, 777–78 (E.D. Mich. 2019) (collecting cases for the proposition that the "overwhelming majority" of courts around the country have found that a plaintiff waives an Appointments Clause challenge by failing to raise it at the administrative level); *Gothard v. Comm'r of Soc. Sec.*, No. 1:17-CV-13638, 2019 WL 396785, at *3 (E.D. Mich. Jan. 31, 2019) (same). District courts in this circuit have uniformly followed that trend. *See Gossett v. Comm'r of Soc. Sec.*, No. 2:18-CV-999, 2019 WL 2514854, at *1 (S.D. Ohio June 18, 2019); *Gilbert v. Comm'r of Soc. Sec.*, No. 3:18CV2026, 2019 WL 2281247, at *2–3 (N.D. Ohio May 29, 2019); *Fortin*, 372 F. Supp. 3d at 568; *Shoops v. Comm'r of Soc. Sec.*, No. 18-10444, 2019 WL 1417164, at *2 (E.D. Mich. Mar. 29, 2019), *appeal docketed*, No. 19-1586 (6th Cir. Feb. 7, 2018); *Hutchins*, 376 F. Supp. 3d at 779; *Hodges v. Comm'r of Soc. Sec.*, No. 1:18-cv-394, 2019 WL 1330847, at *2 (S.D. Ohio Mar. 25, 2019); *Wreede v. Comm'r of Soc. Sec.*, No. 3:18CV164, 2019 WL 1324024, at *22 (N.D. Ohio Mar. 25, 2019); *Cummins v. Comm'r of Soc. Sec.*, No. 3:18 CV 1892, 2019 WL 2465300, at *2 (N.D. Ohio Mar. 18, 2019); *Flack v. Comm'r of Soc. Sec.*, No. 2:18-CV-00501, 2019 WL 1236097, at *2 (S.D. Ohio Mar. 18, 2019);

*Willis v. Comm'r of Soc. Sec.*, No. 1:18-cv-158, 2018 WL 6381066, at *3 (S.D. Ohio Dec. 6, 2018); *Davidson v. Comm'r of Soc. Sec.*, No. 2:16-cv-00102, 2018 WL 4680327, at *2 (M.D. Tenn. Sept. 28, 2018).

Given the weight of that authority, Berry's Appointments Clause challenge is too undeveloped to have merit. Berry does not even acknowledge the prevailing case law in this circuit and, instead, cites two cases from the Middle District of Pennsylvania in which the court found that a social security claimant does not waive an Appointments Clause challenge by failing to raise it at the administrative level and that, even if that were the case, it was appropriate to excuse the untimeliness of the challenges. *See Cirko ex rel. Cirko v. Berryhill*, No. 1:17-CV-680, 2019 WL 1014195, at *1 (M.D. Pa. Mar. 4, 2019); *Bizarre v. Berryhill*, 364 F. Supp. 3d 418, 422 (M.D. Pa. 2019); (Doc. Nos. 24-1, 24-2). Berry states that those cases "indicate the probable outcome in the Fifth and Sixth Circuits[,]" but does not apply them to the facts of her case. (Doc. No. 24, PageID# 1451.) In *Bizarre*, the court noted that the Commissioner failed to point to any "judicial decision indicating that Social Security claimants forfeit judicial review of constitutional claims not raised at the administrative level" and emphasized that the claimant raised the Appointments Clause challenge within weeks of the decision in *Lucia*. *Bizarre*, 364 F. Supp. 3d at 422, 424. Here, the Commissioner has pointed to persuasive authority to support the conclusion that an as-applied Appointments Clause challenge is waived if not presented at the administrative level, and Berry waited almost three months after *Lucia* was decided to raise her challenge. *Bizarre* and *Cirko*—which echoed *Bizarre*—are therefore distinguishable. In the absence of any argument from Berry explaining why those cases should apply here, they are not persuasive.

Berry's reliance on *Jones Brothers* is also misplaced. Berry misreads that case when she argues that it contains "clear language dismissing an administrative exhaustion requirement[.]"

(Doc. No. 24, PageID# 1451.) Although the court in *Jones Brothers* noted that a petitioner cannot be faulted "for failing to raise a *facial* constitutional challenge in front of an administrative body that [cannot] entertain it[,]" 896 F.3d at 674 (emphasis added), the court also emphasized that parties are generally expected "to raise their as-applied or constitutional-avoidance challenges before the [Federal Mine Safety and Health Review] Commission[,]" and that courts will "hold them responsible for failing to do so[,]" *id.* at 677. Berry has offered no reason to believe she asserts a facial challenge to the statutes governing appointment of SSA ALJs, and this Court has found a similar challenge to be as-applied, *see Davidson*, 2018 WL 4680327, at *2. Further, as the Commissioner argues, an essential element of the holding in *Jones Brothers* is absent here. Not only did *Jones Brothers* involve forfeiture of an Appointments Clause challenge rather than waiver, in excusing that forfeiture the court highlighted the uncertainty about "whether the [Federal Mine Safety and Health Review] Commission had authority to rule on the company's constitutional claim." *Jones Bros.*, 896 F.3d at 678. Here, the Commissioner has pointed to authority indicating that a claimant may raise an Appointments Clause challenge to an ALJ at the hearing level, *see, e.g.*, 20 C.F.R. § 404.940, and a recent SSA ruling confirms that, SSR 19-1P, 2019 WL 1324866, at *3 (March 15, 2019) (explaining that the Appeals Council will grant a claimant's request for review where the claimant timely raises an Appointments Clause challenge "either at the Appeals Council level, or previously . . . at the ALJ level"). *Jones Brothers* does not control the outcome here. *See Fitzgerald v. Berryhill*, No. 117CV00144, 2019 WL 1125666, at *3 (W.D. Ky. Mar. 12, 2019) (finding that, because the SSA regulations contemplate challenges to the ALJ and constitutional challenges more generally, the plaintiff could not rely on *Jones Brothers*).

Finally, Berry's claim that she could not have raised her Appointments Clause challenge at the administrative level because *Lucia* had not yet been decided is unavailing. A circuit split existed on the question of whether ALJs are subject to the Appointments Clause as early as December 27, 2016, which was well before Berry's hearing in 2017. *See Page v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 902, 904–05 & n.4 (E.D. Mich. 2018) (explaining that, because the Tenth Circuit acknowledged a circuit split on the question of whether ALJs are subject to the Appointments Clause before the claimant's application was considered by the Appeals Council, it was inappropriate to excuse the untimeliness of claimant's Appointments Clause challenge (citing *Bandimere v. S.E.C.*, 844 F.3d 1168, 1188 (10th Cir. 2016))). Accordingly, Berry could have raised her Appointments Clause argument at the administrative level, and her failure to do so amounts to waiver.

## V.      Recommendation

For the foregoing reasons, the Magistrate Judge RECOMMENDS that Berry's motion for judgment (Doc. No. 19) be DENIED and that the decision of the Commissioner be AFFIRMED.

Any party has fourteen days after being served with this report and recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 20th day of August, 2019.

ALISTAIR E. NEWBERN
United States Magistrate Judge

31